# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL F. SIDOREK and SARA P. SIDOREK, | : |
| Plaintiffs | : CIVIL ACTION NO. 3:13-0208 |
| v. | : |
| CHESAPEAKE APPALACHIA, LLC, | : (JUDGE MANNION) |
| Defendant | : |

## MEMORANDUM AND ORDER

Presently before the court is the defendant's motion to compel arbitration and stay. (Doc. No. 9). Based upon the court's review of the defendant's motion and the materials related thereto, the defendant's motion will be granted.

By way of relevant background, on January 28, 2013, the plaintiffs brought the instant diversity action in an attempt to void portions of their oil and gas lease with the defendant and claiming damages for alleged breaches of contract by the defendant. (Doc. No. 1).

On March 20, 2013, the defendant filed the pending motion to compel arbitration and stay, (Doc. No. 9), along with a brief in support thereof, (Doc. No. 10). The plaintiffs filed a brief in opposition to the defendant's motion on April 2, 2013. (Doc. No. 12). On April 9, 2013, the defendant filed a reply brief. (Doc. No. 13).

In their complaint, the plaintiffs allege that, as Lessors, they signed an oil and gas lease with Southwestern Energy Production Company, ("Southwestern"), as Lessees, on November 11, 2009. Subsequent to the signing of the lease, the rights of Southwestern were transferred to Chesapeake Appalachia, LLC, and Chesapeake Operating, Inc[1].

The plaintiffs allege that the lease had a specific term from November 11, 2009, through November 11, 2012, which has now expired. According to an addendum to the lease, the plaintiffs allege that the defendant had a potential to extend the three year lease term for an additional two years; however, in order to do so, the defendant would be required to be engaging in production on less than 50% of the plaintiffs' property that is subject to the lease agreement and also engaged in active operations of drilling, testing or equipping any new well or wells or existing well or wells on the leased premises. The plaintiffs allege that the defendants have not met these conditions. As a result, the plaintiffs allege that the lease is null and void as to all property not already in the production unit and that the defendant stands in breach of contract by continuing to hold plaintiffs' leased premises subject to a void lease. The plaintiffs are seeking a declaratory judgment that the subject lease is expired and no longer valid as to all real property named in the subject lease, but not contained within an existing production unit.

---

[1]Only Chesapeake Appalachia, LLC, is a defendant named in this action.

In addition, the plaintiffs bring a claim for breach of contract alleging that beginning in August of 2012, the defendant began to pay royalty payments to the plaintiffs for the portion of their property contained within the production unit. According to the plaintiffs, the defendant is deducting costs of producing, gathering, storing, treating, dehydrating, compressing, transporting or otherwise making the oil and/or gas produced from the leased premises ready for sale or use from the royalty payments. The plaintiffs allege that the addendum to their lease specifically provides that the defendant is not permitted to reduce the royalty payments by deducting such costs. As such, the plaintiffs allege that the defendant stands in breach of contract and has been put on notice of such.

The plaintiffs further allege that the defendant has engaged in a course of conduct that has lowered the sale price of the subject gas by selling the gas obtained from the leased premises to a subsidiary of its own corporate membership at a price less than the market price. As a result, the plaintiffs allege that they are receiving reduced royalties because of the reduced sale price. The plaintiffs allege that the defendant stands in breach of contract as it is failing to obtain market value for the subject gas drawn from the leased premises.

In response to the plaintiffs' complaint, the defendant has filed the instant motion to compel arbitration and stay, arguing that the lease specifically incorporates an addendum which contains a valid arbitration

clause. The defendant argues that the plaintiffs' complaint is within the scope of the arbitration cause. Therefore, the defendant seeks to have the court grant its motion to compel arbitration and to stay these proceedings pending the conclusion of the arbitration.

In considering the defendant's motion, both Federal and Pennsylvania state law strongly favor the enforcement of arbitration provisions[2]. See Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) ("It is well established that the FAA reflects a 'strong federal policy in favor of resolution of disputes through arbitration.'" (quoting Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)); Dodds v. Pulte Home Corp., 909 A.2d 348, 351 (Pa.Super.Ct. 2006) ("It is hornbook law that Pennsylvania favors the enforceability of agreements to arbitrate." (citing Quiles v. Fin. Exch. Co., 897 A.2d 281, 285 (Pa.Super.Ct. 2005)). Contracts with an arbitration clause

---

[2]The defendant argues that the Federal Arbitration Act, ("FAA"), governs the enforceability of the arbitration provision in this case because the lease is a transaction that affects "interstate commerce." While so arguing, the defendant acknowledges that there is case law in the Middle District that has held that, when it comes to oil and gas leases, Pennsylvania law, and not the FAA, applies. See Roman v. Chesapeake Appalachia, L.L.C., 2012 WL 207846, at *3 n.1 (M.D.Pa. June 8, 2012) (citing Ulmer v. Chesapeake Appalachia, L.L.C., No. 4:08–cv–2062 (Doc. 11), slip op. at 4 (M.D.Pa. Jan. 16, 2009)). This court need not resolve whether the FAA or Pennsylvania law applies because the FAA and the Pennsylvania Uniform Arbitration Act determine the scope of arbitration provisions similarly. See State Farm Mut. Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 n.1 (3d Cir. 2000) ("[T]here is no meaningful difference between federal and Pennsylvania law when reviewing the scope of an arbitration clause.").

are treated with a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

Applying either Federal or Pennsylvania state law, courts conduct the same two-part inquiry to determine the enforceability of arbitration provisions. First, the court must determine whether "a valid agreement to arbitrate exists," and, second, whether "the particular dispute falls within the scope of the agreement[3]." Kirleis, 560 F.3d at 160; see also Messa v. State Farm Ins. Co., 641 A.2d 1167, 1168 (Pa.Super.Ct. 1994). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander, 341 F.3d at 263–64; see also 9 U.S.C. §§3, 4.

In this case, the plaintiffs challenge the defendant's motion to compel arbitration claiming that the arbitration clause in their lease is ambiguous because it states that "[a]ny claim arising out of or relating to the terms of this

---

[3]Plaintiffs do not argue that the claims raised in their complaint are not within the scope of the arbitration agreement, but only that the arbitration agreement is permissive, not mandatory.

lease, or the breach thereof, *may* be settled by arbitration . . ." (emphasis added)[4]. While the defendant reads the arbitration provision to be mandatory, the plaintiffs argue that arbitration is permissive. Because the provision is susceptible to more than one meaning, the plaintiffs argue that the court should consider extrinsic evidence to determine the intent of the parties in relation to the provision.

The relevant addendum to the lease between plaintiffs and defendant provides, in part, as follows:

> 36. <u>Arbitration</u>
> ANY CLAIM ARISING OUT OF OR RELATED TO THE TERMS OF THIS LEASE, OR THE BREACH THEREOF, MAY BE SETTLED BY ARBITRATION ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION IN ACCORDANCE WITH ITS COMMERCIAL ARBITRATION RULES INCLUDING THE OPTIONAL RULES FOR EMERGENCY MEASURES OF PROTECTION, AND JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. ARBITRATION SHALL TAKE PLACE WITHIN ONE HUNDRED (100) MILES OF THE LEASED

---

[4]The court notes that the plaintiffs also rely on language in ¶12 of the Lease that says that litigation for a breach of default of the subject contract can occur after written notice to the parties and at least a 90 day waiting period. Presumably, the plaintiffs cite to this paragraph of the Lease for its litigation reference. However, the Addendum to the lease which contains the arbitration clause at issue here provides that "[i]n the event of a conflict between a provision contained in this Addendum and a provision contained in the Lease, the provision contained in this Addendum prevails." Thus, to the extent that the Lease would assume litigation and conflicts with the arbitration provision of the Addendum, the Addendum controls.

> PREMISES AND THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF PENNSYLVANIA. THE UNITED STATE (sic) ARBITRATION ACT SHALL GOVERN THE INTERPRETATION, ENFORCEMENT AND PROCEEDINGS PURSUANT TO THE ARBITRATION CLAUSE IN THIS AGREEMENT. EITHER PARTY MAY APPLY TO THE ARBITRATOR SEEKING INJUNCTIVE RELIEF UNTIL THE ARBITRATION AWARD IS RENDERED OR THE CONTROVERSY IS OTHERWISE RESOLVED. EITHER PARTY ALSO MAY, WITHOUT WAVING (sic) ANY REMEDY UNDER THIS AGREEMENT, SEEK FROM ANY COURT HAVING JURISDICTION ANY INTERIM OR PROVISIONAL RELIEF THAT IS NECESSARY TO PROTECT THE RIGHT OF PROPERTY OF THAT PARTY PENDING HE ESTABLISHMENT OF THE ARBITRATION TRIBUNAL OR PENDING THE ARBITRATION TRIBUNAL'S DETERMINATION OF THE MERITS OF THE CONTROVERSY.

In considering the plaintiffs' argument, whether contract terms are ambiguous is for the court to decide as a matter of law. Tuthill v. Tuthill, 763 A.2d 417, 420 (Pa.Super. 2000). As indicated previously, because the Lease at issue contains an arbitration clause, there is a presumption of arbitrability unless the clause is not susceptible to an interpretation that covers the asserted dispute. AT & T Techs., Inc. v. Commc'ns Workers of Am., supra.

Numerous courts considering arguments similar to the plaintiffs' have found that use of the word "may" is not ambiguous and does not automatically render an arbitration clause permissive. See e.g., United Steel Workers of America v. Fort Pitt Steel Casting, 598 F.2d 1273, 1279 (3d Cir. 1979)

7

(considering arbitration agreement as a whole, provision that "[t]he grievance procedure may be utilized by the Company" was mandatory, not permissive); D&H Distrib. Co. v. Nat'l Union Fire Ins., 817 A.2d 1164, 1169 (Pa.Super. 2003). In fact, use of the word "may" in arbitration clauses has been considered to be mandatory on the grounds that such language merely manifests the parties' intent that arbitration be obligatory if either party so chooses. See e.g., Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875, 879 (4th Cir. 1996) (holding that agreement that "all disputes . . . may be referred to arbitration" triggers mandatory arbitration); American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990) (holding that agreement that "[i]f both parties agree that a dispute . . . cannot be settled . . . then such dispute may be submitted to arbitration" triggers mandatory arbitration); Local 771, IATSE, AFL-CIO v. RKO General, Inc., WOR Division, 546 F.2d 1107, 1115-16 (2d Cir. 1977) (holding that agreement that "[t]he parties may submit to arbitration" triggers mandatory arbitration); Deaton Truck Line, Inc. v. Local Union 612, 314 F.2d 418, 421 (5th Cir. 1962) (use of the word 'may' gives either party the option to arbitrate); Akzo v. Chem., Inc. v. Anderson Dev. Co., 1993 WL 5458, at *5 (N.D.Ill. Feb. 26, 1993) ("use of the word may . . . does not [ ] give a party to [the] agreement the option of either submitting its claim to arbitration or by-passing arbitration and seeking immediate recourse to the courts"); In re Winstar Commc'ns, Inc., 335 B.R. 556, 563 (Bkrtcy.D.Del. 2005) ("By using the word 'may,' both parties were given the power to enforce

the arbitration clause.") (citing Chiarella v. Vetta Sports, Inc., 1994 WL 557114, at *3 (S.D.N.Y. 1994) (" . . . the proper interpretation is that the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party. A plain reading of the clause supports such an interpretation. If the clause were wholly optional . . . it would serve no purpose.")); D&H Distrib. Co., 817 A.2d at 1169 (finding that such language evidences the parties' intent to arbitrate disputes at either party's choosing). Cf. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 204 n.1 (1985) ("[t]he use of the permissive 'may' is not sufficient to overcome the presumption that parties are not free to avoid the contract's arbitration procedures").

Generally, even if the use of the word "may" in an arbitration clause is slightly ambiguous, the court will construe that ambiguity in favor of arbitration, as such ambiguity is not sufficient to overcome the "rule that courts are to construe . . . agreements in favor of arbitration." See Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, 683 F.2d 242, 248 (7th Cir. 1982). Further, courts have found that because parties "may" always agree to arbitrate a dispute, to interpret an arbitration agreement that uses the term "may" as permitting rather than mandating arbitration would violate the age-old principle that contracts must not be interpreted so as to render clauses superfluous or meaningless. Hostmark Investors Ltd. v. GEAC Enterprise Solutions, Inc., 2002 WL 1732360, *3 (N.D.Ill. July 26, 2002) (citing

Austin, 78 F.3d at 879; Chiarella, 1994 WL 557114, at *3).

Here, given the surrounding mandatory language provided in the arbitration clause, as well as the reference to the rights of "either party" therein, the court finds that the use of the word "may" in the arbitration clause is not entitled to a permissive interpretation, but is instead mandatory, meaning that where one party invokes the provision, it is mandatory with respect to the other party.

However, even if the court were to find that the arbitration provision was ambiguous allowing for consideration of extrinsic evidence to establish the parties' intent, as the plaintiffs argue, such would not weigh in favor of the plaintiffs' interpretation of the provision. To this extent, the plaintiffs claim that it is clear that the use of the word "may" in the arbitration provision is permissive when considering the negotiations that took place between the plaintiffs and the original lease holder, Southwestern, that ultimately led to the language in the arbitration clause. The plaintiffs claim that Mr. Sidorek is a CPA based in Tunkhannock, Pennsylvania, and has been practicing accounting for over thirty years in Wyoming and Susquehanna Counties. Over the course of his work life, he had the opportunity to review and assist many residents of Susquehanna County in ultimately signing their gas leases with companies including Southwestern and Chesapeake Appalachia, LLC. Mr. Sidorek claims that he became educated as to the potential lease language and lease terms that were being negotiated by the defendant and its

predecessor, Southwestern. Mr. Sidorek states that he was approached by both companies with offers to lease his premises for oil and gas exploration. Because the defendant was not willing to negotiate any of the terms of its lease with Mr. Sidorek, including a mandatory arbitration clause contained therein, Mr. Sidorek claims that he decided not to sign with the defendant, but instead signed with Southwestern. At the time, Mr. Sidorek claims that he took less money in the up-front lease payment to sign with Southwestern because they were more negotiable with the terms of their lease agreement.

Mr. Sidorek claims that he exchanged multiple e-mails with Southwestern in his negotiations with them. Originally, Mr. Sidorek states that Southwestern's lease also contained a mandatory arbitration clause using the term "shall." Mr. Sidorek states that he did not want the arbitration provision included in the lease at all. Through negotiations, Mr. Sidorek claims that he and Southwestern ultimately agreed upon the "may" language which is now contained in the lease. Given these negotiations, the plaintiff argues that it is clear that the language was meant to be permissive.

Despite the plaintiffs' position, correspondence from Mr. Sidorek addressed to Attorney Blose at Chesapeake Energy Company and dated March 5, 2012, contradicts Mr. Sidorek's permissive construction of the arbitration provision. To this extent, referencing the lease number at issue in this matter, Mr. Sidorek writes, in part, that "[m]y lease suggests that pursuing arbitration [is] the first step . . ." and "[t]he lease <u>requires</u> [an] arbitration

proximate to the leased property . . ." (emphasis added). (Doc. No. 13, Ex. B).

Thus, the extrinsic evidence only goes to support the defendant's interpretation that the arbitration clause at issue is mandatory, not permissive.

In light of the above, the defendant's motion to compel arbitration will be granted.

As a final matter, the defendant seeks a stay of these proceedings pending arbitration. The procedure staying litigation pending arbitration is contemplated both by statute, see 9 U.S.C. §3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"), 42 Pa.C.S.A. §7304, and by case law, see, e.g., Lloyd v. HOVENSA, LLC., 369 F.3d 263, 269 (3d Cir. 2004); Philadelphia Hous. Auth. v. Dore & Associates Contracting, Inc., 111 F.Supp.2d 633, 638 (E.D.Pa. 2000); Schantz v. Dodgeland, 830 A.2d 1265 (Pa.Super. 2003). As such, the defendant's motion to stay will be granted as well.

On the basis of the foregoing, **IT IS HEREBY ORDERED THAT:**

**(1)** the defendant's motion to compel arbitration and stay, **(Doc. No. 9)**, is **GRANTED**;

**(2)** the parties are directed to proceed with arbitration on the claims raised in the instant action;

**(3)** the Clerk of Court is directed to **ADMINISTRATIVELY CLOSE** this matter during the period of the stay;

**(4)** the parties may move to reopen this case in order to enforce any related arbitration award that may be made; and

**(5)** the parties are directed to provide the court with quarterly reports informing the court of the status of the arbitration proceedings.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 24, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0208-03.wpd